Erickson v. Nine Mile Irrigation District.

WALTER J. ERICKSON, APPELLEE, V. NINE MILE IRRIGATION
DISTRICT ET AL., APPELLANTS.

FILED NOVEMBER 13, 1922.   No. 22831.

1. **Waters**: IRRIGATION: EXEMPTIONS. It is within the legislative discretion to provide that city or town lots within an irrigation district, which are "occupied and used exclusively for other than agricultural purposes," shall not be assessed or taxed for irrigation district purposes, and the amendments to sections 3472 and 3478, Rev. St. 1913, so providing, are germane to the purpose of the act, and germane to the sections amended.

2. ———: ———: ASSESSMENTS. Assessments made by an irrigation district to pay bonded debts and for the maintenance and operation of its canal or ditch are special assessments, even though made in proportion to valuation, and not by acreage or frontage.

3. ———: ———: ———. If in an irrigation district all the property receiving special benefits is assessed substantially according to such benefits, this is as near equality and uniformity as may be attained in the matter of special assessments.

4. ———: ———: ———: CITY LOTS. City and town lots within an irrigation district which use no water for irrigation, and are used exclusively for other than agricultural purposes, and receive no direct special benefit from the improvement, may properly be distinguished from those lots susceptible of receiving and using water for a beneficial purpose and thus receiving direct special benefits.

5. ———: IRRIGATION DISTRICT BONDS: PROPERTY ASSESSABLE. Where bonds had been issued by an irrigation district under a statute which provides: "Such bonds, and the interest thereon, shall be paid by revenue derived from an annual assessment upon the real property of the district, and all the real property of the district shall be and remain liable to be assessed for such payments"—such liability still exists upon all the real property then in the district, in favor of the bondholders, notwithstanding the subsequent passage of a statute exempting from taxation by irrigation districts city and town lots within the district used exclusively for other than agricultural purposes.

6. **Injunction**: IRRIGATION DISTRICTS: ASSESSMENTS: DEFENSES. In an action brought to restrain the officers of an irrigation district from causing taxes for irrigation district purposes to be assessed

upon lots which, under the amended statute, are not liable to be assessed, such officers are not entitled to defend upon the ground that the amendment impairs the obligation of the contract with the holders of bonds, and with other taxpayers, neither the bond-holders nor such taxpayers being parties to the action.

APPEAL from the district court for Morrill county: RALPH W. HOBART, JUDGE. *Affirmed.*

*Morrow & Morrow,* for appellants.

*A. R. Honnold* and *E. F. Carter, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DAY and ALDRICH, JJ., REDICK and SHEPHERD, District Judges.

LETTON, J.

The object of this action is to enjoin the officers of the Nine Mile Irrigation District and the county treasurer of Morrill county from levying and collecting a tax for irrigation district purposes against certain city lots in the city of Bayard. The court granted the injunction. Defendants appeal.

In 1906 the Nine Mile Irrigation District issued $18,000 in bonds, due in 20 years thereafter, for the purchase of a canal and right of way. The bonds are unpaid. The statute at the time of the passage of the act provided: "Such bonds, and the interest thereon, shall be paid by revenue derived from an annual assessment upon the real property of the district, and all the real property of the district shall be and remain liable to be assessed for such payments as herein provided." Rev. St. 1913, sec. 3471. In 1917 section 3472 of the same statute was amended so as to provide: "That city and town lots within any irrigation district, which are occupied and used exclusively for other than agricultural purposes, shall not be assessed or taxed by such irrigation district during the time such lots are so occupied and used." Laws 1917, ch. 80, sec. 1. The officers of the district disregarded this amendment to the statute, and proceeded to levy and assess a tax against two lots belonging to the plaintiff which

were used exclusively for other than agricultural purposes, one of them being occupied by a hardware store. The owner of the lots then brought this action.

The appellants admit that the taxes levied by an irrigation district for irrigation purposes are special taxes, but insist that the legislative power to levy a special assessment is not unlimited; that the assessment must be apportioned by some rule capable of producing reasonable equality, and that a statute making this impossible is not a legitimate exercise of legislative authority; that to amend the statute so as to exempt part of the real property in the district from contributing its proportionate share to the payment of the bonded indebtedness is an impairment of the obligation of the contract existing between the bondholders and the district, and between the owners of other real estate in such district and the state of Nebraska; that the act is void as applying to irrigation districts organized before the amendment was made, and that it takes private property without due process of law in violation of the fourteenth amendment to the Constitution of the United States. It is also said that the 1917 amendment to section 3472, being made to a section which is merely a direction to the assessor as to what property to assess, does not affect section 3471, and that the latter section is still in full force and effect.

On the other hand, plaintiff and appellee relies upon the validity of the amended statute, and holds that the attempted levy and assessment, being in violation of the statute as amended, is void. He also argues that, since the bondholders are not parties to this suit, their rights cannot be adjudicated herein; that the tax complained of is levied, not only for the protection of the bondholders, but also for the annual cost of the operation and maintenance of the ditch; that the taxpayers alone are interested in this, and that they have no vested interest in the permanent retention of the lots as liable to assessment.

The irrigation district act of this state is based upon the Wright Act of California. It was first considered in

this state in *Board of Directors v. Collins,* 46 Neb. 411, and was upheld by the supreme court of the United States in *Fallbrook Irrigation District v. Bradley,* 164 U. S. 112. There can be no doubt that, if the provisions added by the amendment had been in the act originally, they would have been germane to its purpose, and no complaint could properly be made against the exclusion of property of the nature of these lots from assessment for irrigation district purposes. In some of the California cases objections were made to the validity of the act because of the inclusion of city and town lots within an irrigation district, and their liability to assessment for district purposes. The court pointed out that it was difficult to draw the line between property which received direct special benefits from the creation of the district and that which received indirect special benefits, and that in such an indefinite zone the inclusion or exclusion of town lots was a matter for legislative determination. The argument would have been equally forcible, and the conclusion equally sound, if objection had been made to the act because it excluded city and village real estate lying within the district boundaries. *Turlock Irrigation District v. Williams,* 76 Cal. 360; *Board of Directors v. Tregea,* 88 Cal. 334; *Nampa & Meridian Irrigation District v. Brose,* 11 Idaho, 474. In such a matter the legislative determination is final in the absence of any circumstances which would constitute the inclusion or exclusion a violation of constitutional rights.

Is the act void as impairing the obligation of the contract with the bondholders? In view of the statutory provision, section 3471, Rev. St. 1913, that "all the real property of the district *shall be and remain* liable to be assessed for such payments," to exempt such lots from taxation to pay the interest on the bonds, or the bonds at maturity, by a statute subsequently passed, would clearly impair the obligation of the contract with the bondholders, and this the Constitution prohibits. Such liability to assessment still exists notwithstanding the passage of the

statute exempting lots "used exclusively for other than agricultural purposes." The legislature has recognized this principle in the same act (Rev. St. 1913, secs. 3504-3514, Comp. St. 1922, secs. 2904-2914), which provides that both parties to the contract, the bondholders and electors of the district, must assent before property can be detached from the district by the board. But no bondholder is here complaining, and it is not for defendants to raise this question, since no right of theirs is affected. *State v. Brandt,* 83 Neb. 656; *Cram v. Chicago, B. & Q. R. Co.,* 85 Neb. 586; *Bisenius v. City of Randolph,* 82 Neb. 520.

The levy for the bond fund on the lots affected is only $1.80, while for maintenance and other purposes of the district it amounts to $12.20. Since water-rights are apportioned ratably on the basis of the ratio which the last assessment for each tract for district purposes bears to the whole sum assessed, the withdrawal of water-rights from all such lots not assessed may add to the volume of water subject to be used by the other landholders, sufficient so that each may willingly pay the additional sum necessary to make up the diminution of the bond fund, or perhaps the water released may be applied to additional land added to the district in the manner provided by the statute (Comp. St. 1922, sec. 2892 *et seq.*), and thus no reduction in the acreage of the land assessable result. The court will not presume that the bondholders will suffer, and will not set aside the statute at the instance of parties not affected.

As to the assessment for upkeep, maintenance and salaries: Appellant insists that no change in the statutes can be made by which any part of the property included within the district may be released from its proportionate share of the tax, and that this would have the effect of rendering the taxation not equal or uniform, and that equality and uniformity is a necessary condition for the imposition of special taxes as well as general taxes.

In the opinion in *Board of Directors v. Collins,* 46 Neb.

411, 425, it is said: "Nor does said act conflict with section 1, article IX of the Constitution, requiring taxation to be equal and uniform; that provision relates to the revenue required for the general purposes of government, state and municipal, and has no application to taxes or assessments levied for local improvements"—citing cases. It may be said, also, that, if all the property receiving special benefits is assessed substantially according to such benefits, this is a uniform rule or principle, and is as near uniformity as may be attained in such a matter.

An irrigation district is a public corporation, but not a municipal corporation. *Board of Directors v. Collins,* 46 Neb. 411; *Lincoln & Dawson County Irrigation District v. McNeal,* 60 Neb. 613. Such corporations are subject to regulation, and their charter is subject to amendment by the legislature. Unless it is clearly shown or indisputably established that the result of its action will exact from the owner of private property within the district a sum in substantial excess of the special benefits accruing to him, he is not entitled to complain. To quote from *Norwood v. Baker,* 172 U. S. 269: "We say 'substantial excess' because exact equality of taxation is not always obtainable; and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment." The same is true as to legislation. The lots affected by the amendment, being used exclusively for other than agricultural purposes, use no water, receive no direct special benefit from the improvement, and may properly be distinguished from those susceptible of receiving and using water for a beneficial purpose, and thus receiving direct special benefits.

The argument is made that under the operation of the amended statute, by the growth of a city situated within the irrigation district, large tracts of land might be removed from the operation of the taxing power and thus an excessive burden be cast upon the landowners occupying land for agricultural purposes, but it must be remembered

that the assessments made upon the property in the district, although made by valuation, and not by acreage, foot frontage, or other rule, are special assessments, and must be levied upon the real estate in proportion to the special benefits received. 4 Dillon, Municipal Corporations (5th ed.) sec. 1433; *State v. Green River Irrigation District,* 40 Utah, 83.

Under the statute, the amount of water apportionable to each landowner is determined by the ratio which his assessment bears to the whole sum assessed by the district, so that his assessment and his benefits are proportionate. We have repeatedly held that special assessments for public uses may not exceed the special benefits received by the property, and if the amount of the tax should exceed the special benefit which the owner of the land receives, or is otherwise unjust, he may appeal from the decision of the board of equalization, or have other remedies available when it is sought to take private property for public use without due compensation. But, as we have seen, if the water apportioned to the lots assessed produces revenue elsewhere, this condition may never arise.

The defense in this case is not made by a landholder whose taxes have been increased, and it is not shown how much the tax per acre upon the land subject to assessment would be increased after the lots in controversy and others in their class are exempt from the assessment. We cannot declare an act of the legislature void upon a mere presumption, or at the instance of one not suffering a wrong from a violation of the rights guaranteed to him by the Constitution. It was the duty of the officers of the irrigation district to obey the statute.

AFFIRMED.

The following opinion on motion for rehearing was filed April 10, 1923. *Rehearing denied.*

LETTON, J.

The question whether ministerial officers may defend this suit on the ground that the statute involved is violative of the Constitution of the state has been briefed and

argued upon this motion for rehearing. There seems to be a slight variance between some of our decisions on this point. Compare *State v. Hall*, 99 Neb. 89, 95, with *Van Horn v. State*, 46 Neb. 62, 83. These cases were not called to our attention either in the briefs or upon the oral argument when the case was first argued. We think they are not irreconcilable; but, in the view we take of the statute under consideration, it is unnecessary to examine them in detail, and the point is left open to be further considered if occasion arises.

The constitutionality of an act may depend upon the result of its practical operation. In *Cram v. Chicago B. & Q. R. Co.*, 84 Neb. 607, 85 Neb. 586, an act was held valid *a priori*. Afterwards, *Davison v. Chicago & N. W. R. Co.*, 100 Neb. 462, where the evidence demonstrated that its practical operation was confiscatory, the same statute was held void. Conversely, in *Smyth v. Ames*, 169 U. S. 466, the United States supreme court held a statute regulating railroad rates void, but only void as long as its practical operation violated the protective clauses of the Constitution, and further held that under changed circumstances, making the rates reasonable, the injunction granted to restrain the operation of the statutes would be discharged. The acts in question in these cases were not void *ab initio*, but were only void when and in so far as they operated to take away constitutional rights. The act in question in this case should be obeyed. If in its practical operation it deprives the bondholders of rights protected by the Constitution, when such facts are made to appear, the courts are open to afford relief.

It is argued that by the creation of the district there was a contract made between the state and the landowners in the district to the effect that all real estate within the district shall remain liable for the maintenance of the canal and for running expenses of the district. No such contract exists. The relations of the landowners within the district to each other and to the district are

analogous to those of owners of taxable property within a municipality to each other and to the city or village. The effect of the statute is similar to that resulting when land is detached from the territorial limits of a municipal corporation. We think it has never been held that property thus detached remains *ipso facto* liable for taxation for municipal expenditures in the future. It is presumed that in such cases the legislature will act fairly with respect to all parties concerned, and that is the body which alone can furnish relief if any undue burden it created by the operation of the act in this respect.

Motion for rehearing

OVERRULED.